IN THE CIRCUIT COURT OF
BUTLER COUNTY, ALABAMA

| | |
|---|---|
| BARBARA CLEM § § PLAINTIFF, § § VS. § G. D. SEARLE, LLC. § (hereinafter "Searle") a subsidiary of § PHARMACIA CORPORATION, § (hereinafter "Pharmacia"), a Foreign § Corporation; MONSANTO COMPANY; § PFIZER, INC.; and fictitious Defendants § A, B, C and D being those persons, firms § or corporations whose actions, inactions, § fraudulent suppression, fraud, scheme to § defraud and/or other wrongful conduct § caused or contributed to the Plaintiff's § injuries and damages, and whose true § names and identities are presently § unknown to the Plaintiff but will be § substituted by amendment when § ascertained, § § DEFENDANTS. § | CIVIL ACTION NO. CV 2005-56 |

## COMPLAINT

### TRIAL BY JURY IS REQUESTED

1. This is a civil action brought by Plaintiff, BARBARA CLEM, for injuries resulting in heart attack. Plaintiff was prescribed and used the prescription medication BEXTRA (Valedecoxib). This action seeks monetary damages for personal injuries pursuant to AL Code Ann. Sec. 11-7-13, damages caused by the drugs named herein and ingested by Plaintiff.

2. Plaintiff, BARBARA CLEM is an adult resident of Butler County, Alabama.

3. Plaintiff, BARBARA CLEM, was an adult resident of Butler County, Alabama at

1

the time of her injury.

4.      Defendant G. D. Searle LLC. (hereinafter "Searle") is a subsidiary of Pharmacia Corporation, and is upon information, knowledge and belief an Illinois Corporation, and is registered to do business in Alabama. As such, Defendant Searle can be served through its registered agent: The Corporation Company; 2000 Interstate Park Drive, Suite 204; Montgomery, Alabama 36109. At all times relevant hereto, Searle as a subsidiary of Pharmacia Corporation and Pharmacia Corporation (hereinafter "Pharmacia"); at all times relevant to this action was in the business of manufacturing, marketing, selling and distributing the pharmaceutical product Bextra (Valedecoxib).

5.      Defendant Pharmacia Corporation is a Delaware Corporation licensed and registered to do business in Alabama and can be served through its registered agent: The Corporation Company; 2000 Interstate Park Drive, Suite 204; Montgomery, Alabama 36109.

6.      Defendant Monsanto Company (hereinafter "Monsanto") is the parent of Pharmacia and is a Delaware Corporation. At all times relevant hereto Monsanto through its subsidiary companies was in the business of manufacturing, marketing, selling and distributing the pharmaceutical product Bextra (Valedecoxib). Defendant Monsanto is licensed and registered to do business in Alabama, and may be served through its registered agent: CSC Lawyers Incorporating Service, Inc.; 150 South Perry Street; Montgomery, Alabama 36104.

7.      Defendant Pfizer Inc. (hereinafter "Pfizer") is a Delaware corporation, and at all times relevant hereto Pfizer was in the business of marketing, selling and distributing the pharmaceutical product Bextra (Valedecoxib). Defendant Pfizer is licensed and registered to do business in Alabama and may be served through its registered agent: The Corporation Company; 2000 Interstate Park Drive, Suite 204; Montgomery, Alabama 36109.

2

8. Personal jurisdiction and subject matter jurisdiction are appropriate in this court as to all Defendants, as all Defendants have done business in Butler County, Alabama, either directly or by agent, and have thus availed themselves of this jurisdiction.

9. The Plaintiff's claims accrued in whole or in part in this judicial district and the Plaintiff resided in this judicial circuit at the time of her injury. Some of these Defendants are foreign corporations, which have been and are currently engaged in business, directly or by authorized agent, in this judicial district. Venue and jurisdiction are therefore proper. The claims of Plaintiff herein satisfy the jurisdictional amount of this court.

10. Bextra is a pharmaceutical treatment for musculoskeletal joint pain associated with osteoarthritis, among other maladies. Defendants Searle, Pharmacia, Monsanto and Pfizer did manufacture, design, package, market and distribute this drug. Defendants Searle, Pharmacia and Pfizer (hereinafter "Defendants") encouraged the use of this drug in improper customers, misrepresented the safety and effectiveness of this drug and concealed or understated its dangerous side effects. These Defendants aggressively marketed this drug directly to the consuming public, although only available through prescription, through the use of various marketing mediums, including, but not limited to, print and television advertisements. These Defendants did this to increase sales and profits.

11. At all times relevant hereto, the Defendants actually knew of the defective nature of their product as herein set forth, yet continued to design, manufacture, market, distribute and sell their product so as to maximize sales and profits at the expense of the general public's health and safety in conscious disregard of the foreseeable harm caused by this product. Defendants' conduct exhibits such an entire want of care as to establish that their actions were a result of fraud, ill will, recklessness, gross negligence or willful and intentional disregard to the Plaintiff's

individual rights, and hence punitive damages are appropriate.

## BACKGROUND

12. Bextra is a pharmaceutical treatment for musculoskeletal joint pain associated with osteoarthritis, among other maladies. Defendants Searle, Pharmacia, Monsanto and Pfizer did manufacture, design, package, market and distribute this drug. Defendants Searle, Pharmacia and Pfizer (hereinafter "Defendants") encouraged the use of this drug in improper customers, misrepresented the safety and effectiveness of this drug and concealed or understated its dangerous side effects. These Defendants aggressively marketed this drug directly to the consuming public, although only available through prescription, through the use of various marketing mediums, including, but not limited to, print and television advertisements. These Defendants did this to increase sales and profits.

13. At all times relevant hereto, the Defendants actually knew of the defective nature of their product as herein set forth, yet continued to design, manufacture, market, distribute and sell their product so as to maximize sales and profits at the expense of the general public's health and safety in conscious disregard of the foreseeable harm caused by this product. Defendants' conduct exhibits such an entire want of care as to establish that their actions were a result of fraud, ill will, recklessness, gross negligence or willful and intentional disregard to the Plaintiff's individual rights, and hence punitive damages are appropriate.

14. This Complaint seeks redress for damages sustained by BARBARA CLEM, resulting from Barbara's use of Bextra (Valedecoxib), manufactured and sold by Pharmacia, G.D. Searle, Monsanto and Pfizer, the Defendants herein.

15. BARBARA was 63 years old on or about August 25, 2003, when she was prescribed Bextra (Valedecoxib). On June 6, 2004, she suffered a heart attack due to the use of Bextra (Valedecoxib).

16. The damages sought herein are the direct and proximate result of Defendants' wrongful conduct in connection with designing, testing, inspecting, manufacturing, assembling, developing, labeling, sterilizing, licensing, marketing, advertising, promoting, selling, packaging, supplying and/or distributing the prescription drug Bextra (Valedecoxib).

17. At all times relevant hereto, Defendants were engaged in the business of designing, testing, inspecting, manufacturing, assembling, developing, labeling, sterilizing, licensing, marketing, advertising, promoting, selling, packaging, supplying and/or distributing the pharmaceutical drug Bextra (Valedecoxib) throughout the United States.

18. Had Defendant properly disclosed the risks associated with using Bextra (Valedecoxib), BARBARA would not have taken it for treatment of pain associated with injury.

19. This action is being brought in the Circuit Court of Butler County, because the amount of recovery sought exceeds the jurisdictional levels of all lower courts.

## FIRST CAUSE OF ACTION
## NEGLIGENCE

20. Plaintiff repeats and realleges each of the allegations contained in this Complaint.

21. Defendants, directly or indirectly, negligently and/or defectively designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed the drug Bextra (Valedecoxib).

22. At all times material hereto, Defendants had a duty to users and/or consumers of Bextra (Valedecoxib), including Plaintiff, BARBARA CLEM, to exercise reasonable care in the design, testing, inspection, manufacture, assembly, development, labeling, sterilization, licensing, marketing, advertising, promotion, sale, packaging, supply and/or distribution of Bextra (Valedecoxib).

23. Defendants breached that duty and were negligent in the design, testing, inspection, manufacture, assembly, development, labeling, sterilization, licensing, marketing,

advertising, promotion, sale, packaging, supply and/or distribution of Bextra (Valedecoxib) in that: Bextra (Valedecoxib) was defective when put on the market by Defendants; that with such defect, Bextra (Valedecoxib) was reasonably certain to be dangerous when put to normal use; and that Defendants failed to use reasonable care in designing or making Bextra (Valedecoxib) or in inspecting it for defects. Specifically, Defendants breached their duty by, among other things:

 a. Failing to include adequate warnings that would alert the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Barbara, to the potential risks and serious side effects of the drug;

 b. Failing to adequately and properly test and inspect the drug before placing the drug on the market;

 c. Failing to conduct sufficient testing and inspection of the drug which, if properly performed, would have shown that the drug had serious side effects, including, but not limited to, heart attack, stroke, life threatening allergic and/or skin reactions and/or death.

 d. Failing to adequately warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Barbara, of the potential risks and other serious side effects associated with the drug, including, among other things, heart attack, stroke, life threatening allergic and/or skin reactions and/or death;

 e. Failing to provide adequate post-marketing warnings or instructions after Defendants knew or should have known of the significant risks associated with the use of the drug;

 f. Failing to recall and/or remove the drug from the stream of commerce despite the fact that Defendants knew or should have known of the defective and unreasonably dangerous nature of the drug, including the significant health risks associated with the use of the drug;

g.  Encouraging misuse and overuse while failing to disclose the side effects of the drug to the medical, pharmaceutical and/or scientific communities, and users and/or consumers, including Barbara, in order to make a profit from sales.

24.  Defendants knew or should have known that Bextra (Valedecoxib) caused unreasonably dangerous risks and serious side effects of which users and/or consumers of the drug, including Plaintiff, were not aware. Defendants nevertheless advertised, promoted, marketed, sold, distributed and/or supplied Bextra (Valedecoxib) knowing that there were safer methods for pain relief.

25.  As a direct, legal, proximate and producing result of the negligence of Defendants, BARBARA sustained substantial injuries including, among other things, a heart attack. This injury caused extensive pain and suffering and severe emotional distress and substantially reduced Barbara's ability to enjoy life. In addition, Defendants' negligence caused Plaintiff to expend substantial sums of money for medical, hospital, and related care.

26.  As a direct, legal, proximate and producing result of the negligence of Defendants, BARBARA was injured in health, strength and activity and suffered physical injuries as well as mental anguish. All of said injuries caused Plaintiff intense anxiety, distress, fear, pain, suffering and distress secondary to physical injury and damages.

27.  As a direct, legal, proximate and producing result of the negligence of Defendants, BARBARA required reasonable and necessary health care treatment and services and had incurred expenses therefore. Defendants' negligence was a contributing cause of Plaintiff's injuries and Plaintiff's economic and non-economic loss. As a result of Defendant's negligence, Plaintiff has suffered and will continue to suffer.

28.  By reason of the foregoing, Plaintiff was damaged by the negligence and wanton and willful recklessness of the Defendants. The amount sought herein exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction over this matter.

## SECOND CAUSE OF ACTION
## STRICT PRODUCTS LIABILITY
## DEFECTIVE DESIGN

29. Plaintiff repeats and realleges each of the allegations contained in this Complaint.

30. At all times material hereto, Defendants have engaged in the business of designing, testing, inspecting, manufacturing, assembling, developing, labeling, sterilizing, licensing, marketing, advertising, promoting, selling, packaging, supplying and/or distributing the drug Bextra (Valedecoxib), which is defective and unreasonably dangerous to users and/or consumers of the drug, including Plaintiff.

31. At all times material hereto, Bextra (Valedecoxib) was designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed by Defendants in a defective and unreasonably dangerous condition in ways which include, but are not limited to, one or more of the following:

    a. When placed in the stream of commerce, the drug contained unreasonably dangerous design defects and was not reasonably safe and fit for its intended or reasonably foreseeable purpose or as intended to be used, thereby subjecting users and/or consumers of the drug, including Plaintiff, to risks which exceeded the benefits of the drug;

    b. The drug was insufficiently tested;

    c. The drug caused harmful side effects that outweighed any potential utility;

    d. The drug was not accompanied by adequate labeling or instructions for use to fully apprise the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, of the potential risks and serious side effects associated with its use;

    e. In light of the potential and actual risk of harm associated with the drug's use, a reasonable person who had actual knowledge of this potential and actual risk of

harm would have concluded that Bextra (Valedecoxib) should not have been marketed in that condition.

32. At all times the drug Bextra (Valedecoxib) was designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed, it was expected to reach, and did reach, users and/or consumers of the drug across the United States, including Plaintiff, without substantial change in the defective and unreasonably dangerous condition in which it was sold.

33. At all times, BARBARA used Bextra (Valedecoxib) for its intended or reasonably foreseeable purpose.

34. As a direct, legal, proximate and producing result of the defective and unreasonably dangerous condition of Bextra (Valedecoxib), Plaintiff sustained substantial injuries including, among other things, heart attack. These injuries caused extensive pain and suffering and severe emotional distress and substantially reduced Plaintiff's ability to enjoy life. In addition, the defective and unreasonably dangerous condition of Bextra (Valedecoxib) caused Plaintiff to expend substantial sums of money for medical, hospital, and related care.

35. As a direct, legal, proximate and producing result of the defective and unreasonably dangerous condition of Bextra (Valedecoxib), Plaintiff was injured in health, strength and activity and suffered physical injuries as well as mental anguish. All of said injuries, caused Plaintiff intense anxiety, distress, fear, pain, suffering and distress secondary to physical injury and damages.

36. As a direct, legal, proximate and producing result of the defective and unreasonably dangerous condition of Bextra (Valedecoxib), Plaintiff, BARBARA CLEM, required reasonable and necessary health care treatment and service and had incurred expenses therefore.

37. By reason of the foregoing, BARBARA was damaged by the wanton and willful recklessness of the Defendants, who will be liable to Plaintiff. The amount sought herein

exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction over this matter.

### THIRD CAUSE OF ACTION
### STRICT PRODUCTS LIABILITY
### FAILURE TO WARN

38. Plaintiff repeats and realleges each of the allegations contained in this Complaint.

39. Bextra (Valedecoxib) was defective and unreasonably dangerous when it left the possession of Defendants in that it contained warnings insufficient to alert the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Barbara, to the dangerous risks and reactions associated with Bextra (Valedecoxib) when used for its intended or reasonably foreseeable purpose. Those dangerous risks and reactions included, but were not limited to, heart attack, stroke, life threatening allergic and/or skin reactions and/or death and other serious and life threatening side effects.

40. At all times, BARBARA used the drug for its intended or reasonably foreseeable purpose.

41. BARBARA could not have discovered any defect in the drug through the exercise of care.

42. Defendants, as manufacturers of a prescription drug, is held to the level of knowledge of an expert in the field.

43. The warnings that were given by Defendants were not accurate or clear and/or were ambiguous.

44. Defendants had a continuing duty to warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, of the potential risks and serious side effects associated with the use of Bextra (Valedecoxib).

45. As a direct, legal, proximate and producing result of Defendant's failure to warn, BARBARA sustained harm, including, among other things, heart attack. These injuries caused extensive pain and suffering and severe emotional distress and substantially reduced Barbara's

10

ability to enjoy life. In addition, Defendants' failure to warn caused Plaintiff to expend substantial sums of money for medical, hospital, and related care.

46. As a direct, legal, proximate and producing result of Defendants' failure to warn, BARBARA was injured in health, strength and activity and suffered physical injuries as well as mental anguish. All of said injuries caused Plaintiff intense anxiety, distress, fear, pain, suffering and distress secondary to the physical injuries and damages.

47. As a direct, legal, proximate and producing result of Defendants' failure to warn, BARBARA required reasonable and necessary health care treatment and services and had incurred expenses therefore.

48. By reason of the foregoing, BARBARA was damaged by the wanton and willful recklessness of the Defendants who will be liable to Plaintiff. The amount sought herein exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction over this matter.

## FOURTH CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY OF MERCHANTABILITY

49. Plaintiff realleges all prior paragraphs of this complaint as if fully set out herein.

50. Defendants Searle, Pharmacia, Monsanto and Pfizer made express representations to the consuming public at large through their aggressive marketing and advertising campaigns relative to their product, Bextra.

51. Defendants Searle, Pharmacia, Monsanto and Pfizer through their detail sales representatives, made representations of the safety and efficacy of their product, Bextra.

52. Bextra does not conform to the express representations made through the Defendants' advertising and marketing efforts

53. Bextra does not conform to the express representations made by Defendants' agents/sales representatives.

11

54. Defendants' conduct in this matter was a contributing cause of injuries and damages suffered by Plaintiff.

55. Wherefore, this Plaintiff demands judgment against Defendants in such an amount of compensatory and punitive damages as a jury deems reasonable, plus cost.

### FIFTH CAUSE OF ACTION
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

56. Plaintiff repeats and realleges each of the allegations contained in the Complaint.

57. Defendant is a "merchant" as defined in *Alabama Code Annotated* § 7-2-104.

58. Bextra (Valedecoxib) is a "good" as defined *Alabama Code Annotated* § 7-2-105.

59. At the time that Defendants designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed the drug Bextra (Valedecoxib), Defendants knew of the intended, reasonably foreseeable and/or ordinary use of Bextra (Valedecoxib) and impliedly warranted the drug to be of merchantable quality and safe and fit for such use.

60. Barbara, in ingesting Bextra (Valedecoxib), reasonably relied upon the skill and judgment of Defendants as to whether Bextra (Valedecoxib) was of merchantable quality and safe and fit for its intended, reasonably foreseeable and/or ordinary use.

61. In breach of the implied warranty given by Defendants, Bextra (Valedecoxib) was not of merchantable quality or safe or fit for its intended, reasonably foreseeable and/or ordinary use because the product was and is unmerchantable, in a defective condition and unreasonably dangerous and unfit for the intended, reasonably foreseeable and/or ordinary purpose for which it was intended as described above.

62. In breach of the implied warranty given by Defendants, Bextra (Valedecoxib) was not of merchantable quality or safe or fit for its intended, reasonably foreseeable and/or ordinary use because, among other things:

a. Use of Bextra (Valedecoxib) carried a risk of, among other things, heart attack, stroke and/or death and other serious and life threatening side effects;

b. Defendants failed to include adequate warnings with the drug that would alert the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Barbara, of the potential risks and serious side effects of the drug;

c. Defendants failed to provide adequate post-marketing warnings or instructions after Defendants knew or should have known of the potential risks and serious side effects associated with the use of the drug.

63. As a direct, legal, proximate and producing result of Defendants' breach of warranty, BARBARA sustained substantial injuries including, among other things, heart attack. These injuries caused extensive pain and suffering and severe emotional distress and substantially reduced Barbara's ability to enjoy life. In addition, Defendants' failure to warn caused Plaintiff to expend substantial sums of money for medical, hospital and related care.

64. As a direct, legal, proximate and producing result of Defendants' breach of warranty, BARBARA has been injured in health, strength and activity and suffered physical injuries as well as mental anguish. All of said injuries caused Plaintiff intense anxiety, distress, fear, pain, suffering and distress secondary to the physical injuries and damages.

65. As a direct, legal, proximate and producing result of Defendants' breach of warranty, BARBARA required reasonable and necessary health care treatment and services and had incurred expenses therefore.

66. As a result of Defendant's breach of warranty, Plaintiff has suffered and will continue to suffer.

67. By reason of the foregoing, BARBARA has been damaged by the wanton and willful recklessness of the Defendants who will be liable to Plaintiff. The amount sought herein

exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction over this matter.

## SIXTH CAUSE OF ACTION
## FRAUD

68. Plaintiff repeats and realleges each of the allegations contained in the Complaint.

69. Defendants recklessly, knowingly, intentionally, and fraudulently misrepresented to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, the safety and efficacy of the drug and/or recklessly, knowingly, intentionally and fraudulently concealed from the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, material, adverse information regarding the safety and efficacy of Bextra (Valedecoxib).

70. Defendants' misrepresentations were communicated to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Barbara, with the intent that they reach users and/or consumers of the drug, including Barbara.

71. Defendants either knew or should have known that the representations were false.

72. Defendants made the misrepresentations and/or actively concealed information concerning the safety and efficacy of the drug with the intention and specific desire that the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Barbara, would rely on such in selecting Bextra (Valedecoxib) as a pain reliever.

73. Defendants made these misrepresentations and/or actively concealed information concerning the safety and efficacy of Bextra (Valedecoxib) in its labeling, advertising, product inserts, promotional materials or other marketing efforts.

74. Defendants made these misrepresentations and actively concealed adverse information at a time when Defendants knew or should have known that its drug product had defects, dangers and characteristics that were other than what Defendants had represented to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug,

14

including Plaintiff. Specifically, Defendants misrepresented to and/or actively concealed from the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, that:

a. There had been insufficient studies regarding the safety and efficacy of the drug;

b. The drug was fully and adequately tested, despite knowing that there had been insufficient or inadequate testing of the drug;

c. Prior studies, research, reports and/or testing had been conducted linking the use of the drug to serious prothrombotic and allergic and/or skin reactions, including, but not limited to, adverse cardiovascular events, and/or Stevens-Johnson Syndrome/toxic epidermal necrolysis;

d. Defendants knew or should have known of reports of increased heart attacks, allergic and/or skin reactions and/or strokes associated with the use of the drug;

e. Defendants knew or should have known of the greatly increased risk of developing heart attacks, allergic and/or skin reactions and/or strokes associated with use of Bextra (Valedecoxib); yet, despite this they were downplaying the risk of the drug.

75. The misrepresentations of and/or active concealment by Defendants were perpetuated directly and/or indirectly by Defendants, its sales representatives, employees, distributors, agents and/or detail persons.

76. The misrepresentations of and/or active concealment by Defendants constitute a continuing tort. Indeed, through Defendants' product inserts, Defendants continued to misrepresent the potential risks and serious side effects associated with the use of Bextra (Valedecoxib). Moreover, Defendants had a post-sale duty to warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, about the potential risks and serious side effects associated with the use of Bextra (Valedecoxib) in a timely manner, yet they failed to provide such warning.

77. BARBARA justifiably relied on and/or was induced by the misrepresentations and/or active concealment of Defendants to purchase and ingest Bextra (Valedecoxib) to his detriment.

78. As a direct, legal, proximate and producing result of the misrepresentations of Defendants, BARBARA sustained substantial injuries including, among other things, heart attack. These injuries caused extensive pain and suffering and severe emotional distress for Plaintiff, and substantially reduced Barbara's ability to enjoy life. In addition, the misrepresentations of Defendants caused Plaintiff to expend substantial sums of money for medical, hospital, and related care.

79. As a direct, legal, proximate and producing result of the misrepresentations of Defendants, BARBARA has been injured in health, strength and activity and suffered physical injuries as well as mental anguish. All of said injuries caused BARBARA intense anxiety, distress, fear, pain, suffering and distress secondary to the physical injury and damages.

80. As a result of Defendant's fraud, Plaintiff has suffered and will continue to suffer.

81. As a direct, legal, proximate and producing result of the misrepresentations of Defendants, BARBARA required reasonable and necessary health care treatment and service and had incurred expenses therefore.

82. By reason of the foregoing, BARBARA has been damaged by the wanton and willful recklessness of the Defendants who will be liable to Plaintiff. The amount sought herein exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction over this matter.

## SEVENTH CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION

83. Plaintiff repeats and realleges each of the allegations contained in the Complaint.

84. Defendants negligently misrepresented or failed to exercise reasonable care in representing to the medical, pharmaceutical and/or scientific communities, and users and/or

consumers of the drug, including Barbara, the safety and efficacy of the drug and/or negligently concealed or failed to exercise reasonable care by concealing and failing to disclose to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Barbara, material, adverse information regarding the safety and efficacy of Bextra (Valedecoxib).

85. Defendants' misrepresentations were communicated to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, with the intent that they reach users and/or consumers of the drug, including Plaintiff.

86. Defendants made these misrepresentations and/or actively concealed information concerning the safety and efficacy of Bextra (Valedecoxib) in its labeling, advertising, product inserts, promotional materials or other marketing efforts.

87. Defendants either knew or should have known that the representations were false.

88. Defendants knew or should have known that the misrepresentations and/or omissions concerning the safety and efficacy of the drug would be relied upon by the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, in selecting Bextra (Valedecoxib) as a pain reliever.

89. Defendants made these misrepresentations and actively concealed adverse information at a time when Defendants knew or should have known that its drug product had defects, dangers and characteristics that were other than what Defendants had represented to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff. Specifically, Defendants misrepresented to and/or actively concealed from the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, that:

    a. There had been insufficient studies regarding the safety and efficacy of the drug;

b. The drug was fully and adequately tested, despite the fact that there had been insufficient or inadequate testing of the drug;

c. Prior studies, research, reports and/or testing had been conducted linking the use of the drug to serious adverse cardiovascular events, allergic and/or skin reactions and strokes;

d. Defendants knew or should have known of reports of heart attacks associated with the use of the drug;

e. Defendants knew or should have known of the greatly increased risk of heart attacks, strokes, life threatening allergic and/or skin reactions and/or death and other serious and life threatening side effects associated with the drug; yet, despite this was downplaying the risks of the drug.

90. The misrepresentations of and/or active concealment by Defendants were perpetuated directly and/or indirectly by Defendants, their sales representatives, employees, distributors, agents and/or detail persons.

91. The misrepresentations of and/or active concealment by Defendants constitute a continuing tort. Indeed, through Defendants' product inserts, Defendants continued to misrepresent the potential risks and complications associated with Bextra (Valedecoxib). Moreover, Defendants had a post-sale duty to warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, about the potential risks and serious side effects associated with the use of Bextra (Valedecoxib) in a timely manner, yet it failed to provide such warning.

92. Plaintiff justifiably relied on and/or was induced by the misrepresentations and/or active concealment of Defendants to purchase and ingest Bextra (Valedecoxib) to his detriment.

93. As a direct, legal, proximate and producing result of the misrepresentations of Defendants, Plaintiff sustained harm, including, among other things, heart attack. These injuries have caused extensive pain and suffering and severe emotional distress and substantially reduced

Plaintiff's ability to enjoy life. In addition, the misrepresentations of Defendants caused Plaintiff to expend substantial sums of money for medical, hospital, and related care.

94. As a direct, legal, proximate and producing result of the misrepresentations of Defendants, BARBARA was injured in health, strength and activity and suffered physical injuries as well as mental anguish. All of said injuries caused Plaintiff intense anxiety, distress, fear, pain, suffering and distress secondary to the physical injury and damages.

95. As a direct, legal, proximate and producing result of the misrepresentations of Defendants, BARBARA required reasonable and necessary health care treatment and service and had incurred expenses therefore.

96. As a result of the misrepresentations of the Defendants, Plaintiff has suffered and will continue to suffer.

97. By reason of the foregoing, Plaintiff has been damaged by the wanton and willful recklessness of these Defendants who will be liable to Plaintiff. The amount sought herein exceeds the jurisdictional limits of all lower courts, which would otherwise have jurisdiction over this matter.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that the Defendants be cited to appear and answer herein; that upon final trial herein, Plaintiff recovers damages as set forth above from Defendants, including cost of Court, pre-judgment and post-judgment interest at the legal rates, and that Plaintiff has such other and further relief, both general and special, at law and in equity, to which she may be justly entitled under the facts and attending circumstances.

_/s/ Navan Ward_
NAVAN WARD, JR. (WAR062)
ANDY D. BIRCHFIELD, JR. (BIR006)
PAUL SIZEMORE (SIZ004)

**OF COUNSEL:**

BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
Post Office Box 4160
Montgomery, Alabama 36103-4160
(334) 269-2343 telephone
(334) 954-7555 facsimile

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES**